## DE MANKOWSKI v. SHIP CHANNEL DEVELOPMENT CO.    (No. 9029.)

Court of Civil Appeals of Texas. Galveston. Oct. 18, 1927.

**I. Libel and slander ☞38(3)—Statement in petition in suit is absolutely privileged, and so not basis for libel.**

However false and malicious they be, statements in petition in suit for cancellation of contract are absolutely privileged, and cannot constitute basis for action for libel.

**2. Libel and slander ☞85—Petition for slander held not based on statements made in petition in suit for rescission of contract.**

Petition for slander *held* not based on bringing of suit for rescission of contract or the false statements in the petition thereof, but on slanderous statements made to various named persons.

**3. Libel and slander ☞38(3)—Privilege does not allow statements out of court similar to those in pleadings.**

The privilege accorded a litigant which exempts him from liability for false charges made in his pleadings or in the court in the course of a judicial proceeding cannot be enlarged into a license to go about in the community and make false and slanderous statements against his adversary and escape liability because he had made similar charges in his pleadings.

**4. Libel and slander ☞120(2)—Inference of malice and award of exemplary damages are authorized in absence of pleading or evidence of truth of charges of dishonesty in business, or reasonable grounds of belief.**

There being neither pleading nor evidence that statements directly charging one with dishonesty in the conduct of its business were true, or that one making them had reasonable grounds to believe them to be, the jury were authorized to infer that they were maliciously made, and to award exemplary damages.

**5. Libel and slander ☞73—Corporation can recover for slander of its officers, as a bunch of crooks, necessarily affecting its business integrity.**

While a corporation cannot recover for slander of an officer which affects only his reputation, it is otherwise where the defamatory statements were not confined to charges affecting his integrity, but included the entire management of the corporation, who were designated as a bunch of crooks, necessarily affecting its business integrity.

**6. Libel and slander ☞89(1)—Corporation can without pleading or proving special damages recover for injury from defamation of its method of conducting its business.**

A corporation can recover for injury to its business from defamatory words concerning its method of conducting its business, without any allegation or proof of special damages.

**7. Trial ☞250—Instruction on right to bring action, a matter not challenged by pleading or evidence, held properly refused.**

Right of plaintiff to bring action against defendant on any cause of action which he believed he had not being challenged by pleading or evidence, and so not being in issue, the court properly declined to instruct thereon.

**8. Trial ☞260(1)—Refusal of charge is not ground of complaint, another substantially the same, form of which was not objected to, having been given.**

A party may not complain of the refusal of his requested charge, where another substantially the same, the form of which was not objected to, was given.

**9. Trial ☞250—Charge submitting good faith in making slanderous statements held properly refused for want of pleading or evidence raising issue.**

Charge submitting the issue of good faith in making the slanderous statements was properly refused, neither pleading nor evidence raising the issue.

**10. Dismissal and nonsuit ☞22—Agreement between defendant and one plaintiff held not a dismissal by him of his suit.**

Agreement by defendant with one plaintiff for omission of evidence on certain subject, admitting that plaintiffs have no grounds for appointment of receiver since withdrawal of certain other plaintiffs, *held* not a dismissal of the suit by such plaintiff.

Error from District Court, Harris County; Charles E. Ashe, Judge.

Suit by John de Mankowski against the Ship Channel Development Company. From a judgment for defendant on its petition for slander contained in its answer, plaintiff brings error. Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Webb & Webb, of Houston, for plaintiff in error.

Ward & Ward, and J. S. Bracewell, all of Houston, for defendant in error.

PLEASANTS, C. J. This appeal is from a judgment in favor of appellee against appellant for slander rendered on the petition of appellee contained in an answer filed by it in a suit for cancellation of contract and appointment of a receiver brought against appellee by appellant and Mike Szabo, J. M. Boyd, and L. W. Maxwell, who are stockholders of appellee corporation.

The pleading upon which appellee's recovery is based, after alleging that appellant had entered into a contract with appellee for the subdivision and sale by it of land adjoining the town of Harrisburg in Harris county to be known and designated as El Vera Court addition, and that appellee had faithfully and fully complied with all of the provisions of its contract, contains the following allegations:

· "That instead of co-operating with defendant in the sale of lots in said addition, the plaintiff John de Mankowski has failed and refused to in anywise co-operate or aid defendant, but has continuously placed impediments and obstacles in the way of defendant's performance thereof. That he has fraudulently and repeatedly misrepresented to prospective purchasers of stock in defendant corporation the standing of this defendant's credit and the worth of its stock, and has falsely impugned defendant's credit, its financial strength, and to prospective purchasers has slandered the title of defendant to said property, has made false accusations with respect to defendant's officers both to prospective buyers and to those who have already purchased stock and lots. That he has falsely represented to buyers of lots that defendant cannot deliver the title to said lots, when the only delay or hinderance to the delivery of said title has been the wrongful and arbitrary actions of the said plaintiff John de Mankowski, in refusing to carry out and perform his contracts with defendant. * * * That the said plaintiff, John de Mankowski, has repeatedly and fraudulently represented to prospective purchasers of lots from the defendant in said addition that defendant was not worthy of credit, that it had no financial strength, and that it has no title and was unable to deliver title to said property. That said Mankowski has made false accusations respecting defendant corporation's officers and its property to such prospective buyers.

"Defendant alleges: That this suit was not brought in good faith but was brought as a part of a general scheme on the part of plaintiff Mankowski to injure this corporation in its financial standing, and was a part of his scheme and purpose to slander the title of defendant's property and of its good name and business standing and in order to get publicity of his false and malicious charges, and while two of the plaintiffs, Boyd and Szabo, appear to have signed and sworn to the petition that they in fact did not do so, and that the certificate of the notary that they appeared before him and signed and swore to the petition is false and that the said plaintiffs did not sign and swear to said petition and have disavowed and disaffirmed any authority from them to bring this suit or for the allegations of said petition, and said defendant alleges and believes that said suit was not authorized by the plaintiff Maxwell. That defendant is incorporated under the laws of the state of Texas for the purposes authorized by law. That it has bought certain real property in different parts of Harris county and has entered into certain contracts for the subdivision and development of additions in different parts of Harris county and particularly in and near the vicinity of Harrisburg and Pasadena. That it has built up a large and valuable business and has conducted its business affairs along ethical lines and as a corporation should conduct its business affairs, and has built up and enjoyed a good reputation. That as hereinabove alleged it is entirely solvent, and has been, after due investigation by the secretary of state, granted a permit to and authorized to increase its capital stock. That in the conduct of its business defendant's reputation for solvency and stability is of peculiar value to it, and that, as hereinabove alleged and as here now alleged, plaintiff Mankowski has maliciously schemed and sought to injure defendant in its reputation, business, and credit, and at various times and on various occasions has made false and slanderous remarks of and against this defendant, its officers, and its solvency as a business concern. That said false representations have been made on various and divers occasions unknown to defendant, and that substantially the same statements have been made on various occasions by said plaintiff Mankowski as are contained and set out in the petition herein filed, and that said allegations purported to be made therein by the plaintiffs Maxwell, Szabo, and Boyd are substantially the statements made to them by the plaintiff Mankowski, and that such statements are false and the said plaintiff Mankowski knew such statements to be false and that he had no basis in fact whatsoever upon which to make said statements. That said plaintiff Mankowski has made similar statements on different occasions to the following named persons: Mrs. Martha Stein; Dr. J. J. Devoti; Miss I. M. Steed; L. J. Steed; Miss Fannie Sedgwick; S. F. Massengill; Mrs. L. T. Deats; O. L. Ranet; F. E. Hood; John G. Manison. That the exact words used by the said plaintiff to these various people are unknown to defendant and the dates thereof are unknown to defendant, but substantially the same false statements were made to each and all of them and all of said false and slanderous statements were concerning this defendant's integrity and reliability, and plaintiff had repeatedly and on divers occasions made said false and slanderous statements concerning defendant, and all of which were false and untrue, and because of the fact that the said plaintiff John de Mankowski had had business associations with the defendant and had entered into contracts with the defendant such statements were believed, by the persons to whom they were made, to be true, and carried undue weight with reference to the matters to which they claimed to relate. That the defendant owes the plaintiff John de Mankowski nothing. That defendant has fully carried out and performed its contract with the said Mankowski except as hereinabove alleged wherein it has been pre-

vented such performance through his wrongful acts. That the said Mankowski has no rights in law or equity to cancel said contracts, and that they are in full force and effect, and that by his acts and failure to perform and his refusal to perform and carry out his contract with defendant, and by his willful and malicious statements impugning the credit, resources, reliability, and integrity of said defendant and the title to its property, he has actually damaged the defendant in the sum of $10,000, and because of his making said statements maliciously and with intent to injure said defendant in its good name and to interfere with its doing business, plaintiff John de Mankowski is liable to and should pay the defendant and has damaged it in the sum of $25,000 punitary damages, for which respective sums defendant sues John de Mankowski and prays judgment, and defendant further asks that said sums as this defendant may recover against the plaintiff John de Mankowski be decreed a lien upon any and all interest in said property in said El Vera Court addition."

The allegations in the petition of plaintiffs Szabo, Boyd, Maxwell and appellant, referred to in the pleading above set out, charge in substance that plaintiffs were induced by fraudulent misrepresentations of appellee to become purchasers of its capital stock, such false and fraudulent representations being as to the value, earning power, and amount of the stock, the amount of stock subscribed, and the sum actually paid in on such subscriptions, all of which representations were contained in a financial statement presented by plaintiffs and purporting to reflect the true financial condition of appellee; that the representations made by the defendant company to induce them to purchase the stock were false and fraudulent, in that the capital stock subscribed was brought about by a fraudulent and fictitious value, excessively made, on certain properties alleged to have been conveyed to the company, and that certain contracts alleged to be held by the company had, in truth and in fact, been canceled theretofore; that certain contracts for the purchase of lots, which the defendant company alleged to hold, had likewise been canceled; that a certain draft for $10,000.00, entered up in the financial statement as assets, was a fictitious draft; that the directors were mere figureheads, and that the company was being operated for the benefit of Walter H. Meyer, its president; that the plaintiffs Boyd, Szabo, and Maxwell had demanded an audit of the books of the company, which audit was refused, "and that by reason of such refusal plaintiffs are not at this time informed as to the true condition of defendant company, but they are informed and believe that said company is insolvent, or that owing to the gross mismanagement of said company, as herein set out, they are in imminent danger of becoming insolvent." The plaintiffs then asked for a receiver of the company, and that such receiver so appointed be authorized to

pay off and discharge the indebtedness of the company, and, in the alternative, that the plaintiffs Szabo, Boyd, and Maxwell have and recover of the company the amount of money they had invested in the company's stock.

The appellant Mankowski further alleged in said petition that appellee had violated its contract for the sale of his lots in the El Vera Court addition, in failing to collect moneys due on contracts for the sale of lots and failing to cancel contracts of delinquent purchasers of lots and that appellee had failed and refused to pay him moneys due him from collections made by appellee from purchasers of plaintiff's lots; that the defendant had sold certain lots unknown to the plaintiff, and accepting the initial cash payment after canceling the contract, and reselling without remitting the moneys to the plaintiff or accounting for the amount; that the defendant withheld interest and taxes collected, amounting to more than $2,200. He joined the other plaintiffs in asking for a receiver and accounting, and, in the alternative, if a receiver was not appointed, then by reason of the breach of its contract he asked that the contract between him and the defendant be canceled and held for naught, and that the agents of the defendant be enjoined from exercising any control over the plaintiff's property.

The petition for the receiver was sworn to by the plaintiffs Szabo, Boyd, and Mankowski.

The only answer made by appellant to appellee's pleading seeking damages against him was a general denial.

After the trial had begun in the court below and the pleadings of the parties had been read to the jury, the plaintiffs Szabo and Boyd advised the court in writing that they no longer desired to prosecute their suit, and the court thereupon dismissed them as parties plaintiff.

After hearing the evidence, the court found in favor of the appellee against the plaintiffs Maxwell and Mankowski on their suit for damages, appointment of a receiver, cancellation of contract, and for injunction, and rendered judgment that they take nothing against appellee, and perpetually enjoining appellant "from in any wise interfering with defendant's business affairs and its carrying out and performing its contract with him and from making and circulating malicious and false statements and representations concerning defendant and its solvency, business standing and integrity."

Appellee's claim for damages for slander having been submitted to a jury, upon the verdict of the jury judgment was further rendered in favor of appellee against appellant for $2,000 actual and $4,000 exemplary damages.

Upon a hearing on a motion for new trial presented by appellant, the trial judge modified the original judgment by vacating that portion thereof adjudicating the rights and

cause of action asserted by plaintiff Maxwell and in lieu thereof dismissing said plaintiff from the suit, and further modifying the original judgment by setting aside and vacating that portion enjoining the appellant from making and circulating malicious and false statements concerning the business standing, solvency, and integrity of appellee, and. expressly denying and refusing appellee's prayer for such injunction.

Upon the issues submitted to the jury, the following evidence was adduced:

Dr. J. M. Boyd, one of the plaintiffs who dismissed his suit against the appellee, testified, in substance, that at the time appellant approached him on the subject of joining him in the suit against appellee, he heard appellant make the statement that the appellee corporation was insolvent and could not go ahead. This witness further testified:

"I heard him say that at different times, in different conversations. I heard him say that the company was not able to carry out the contract; he said they were broke and not able to carry out their contracts. He intimated something to the effect that the directors were mere figureheads, and that Mr. Myers was the whole thing. When I first knew Mankowski he was working for the Ship Channel Development Company, and approached me as a representative of the company. I met him in their office, and that is why I had confidence in him and listened to him as I did. He told me that the company was going busted, that they were broke; wasn't able to pay off; not able to meet certain checks coming in."

Mike Szabo, the other plaintiff who dismissed his suit, testified that appellant talked to him frequently about the appellee company and told him that it was "going insolvent and busted."

Both of these witnesses further testified that they did not authorize appellant or any one else to join them in a suit against appellee and that the affidavit to the petition was not made by them. Each of them testified in substance that he signed the paper presented to him by appellant without reading it or knowing its contents, and upon appellant's representation before stated as to the financial condition of the company and his further representation that he wanted authority from witness as a stockholder to have the affairs of the company investigated. When appellant presented the paper to witness and asked him to sign it, he told witness that it was too long for him to read, and witness signed without reading it.

Several other witnesses testified to statements made by appellant to the effect that appellee company was "broke"; that its officers' were "a bunch of crooks"; that "they were not straight"; and that the company was "busted" and "weren't able to pay off." Some of these statements were made to a bank, some to an abstractor and creditor of the company, some to a purchaser or prospective purchaser of lots from the company, and to stockholders of the company.

Testimony offered by appellee was amply sufficient to sustain a finding that none of these charges were true and that the effect of these derogatory statements of appellant was to materially decrease the volume of appellee's business and the amount of its profits.

W. H. Myers, the president of the company, testified:

"The filing of these suits and the statements made by Mr. Mankowski have materially damaged the business of my company and its reputation. I made an extensive investigation and a great many lot holders have told me of statements he made to them, and I have several of them here as witnesses."

Appellant was present at the trial and was represented by attorney. He did not testify, and offered no evidence in contradiction of appellee's evidence of damage caused it by his defamatory statements, nor any evidence tending to show the truth of such statements or to give him any reasonable grounds to believe them to be true.

In response to the special issues submitted by the court, the jury found that appellant "made false and malicious statements regarding the financial standing, solvency, and business integrity of the defendant substantially as alleged in defendant's cross-action." The jury further found that appellee, by such false and malicious statements of appellant, had sustained actual damages in the sum of $2,000, and was entitled to recover $4,000 as exemplary damages.

Appellant's brief presents 16 propositions based upon 49 assignments of error upon which he seeks a reversal of the judgment. The first four propositions complain of the refusal of the court to instruct the jury to return a verdict in favor of appellant on appellee's claim for damages. It is first contended that the pleadings and undisputed evidence show that the defamatory statements of appellant upon which appellee's claim for damages is based were unqualifiedly privileged, and therefore no damages for injury caused thereby can be recovered. It is further urged that, if not absolutely privileged, such statements were qualifiedly so, and, no malice and no special damage being shown, there is no basis for recovery of damages by appellee.

The first of these contentions wholly ignores the pleadings and evidence as to defamatory statements made by appellant in addition to and in repetition of the statements contained in his petition filed in this suit and in a petition filed by him in another suit brought against appellee. These statements, made at various times both prior to and subsequent to filing of appellant's suits against appellee, and to various persons, reflect upon the solvency and business integrity of appellee and were well calculated to cause, and the evidence shows did cause, loss and injury to appellee's business.

[1] We agree with appellant that, under the rule of decision prevailing in this state, the statements contained in his petition in this suit are absolutely privileged and the filing by appellant of such petition cannot be made the basis of a cause of action for libel or slander, it matters not how false and malicious such statements may be. Runge v. Franklin, 72 Tex. 585, 10 S. W. 721, 3 L. R. A. 417, 13 Am. St. Rep. 833; Railroad Co. v. Taber (Tex. Com. App.) 235 S. W. 841.

[2, 3] But appellee's pleadings, which we have before set out at length, cannot be construed as basing its cause of action upon the filing and presentation of appellant's petition in this suit containing false and defamatory statements. While appellee's pleading alleges that this suit was not brought by appellant in good faith, but as part of a scheme to injure appellee and to slander the title to its property, and its good name and business standing, and in order to give publicity to his false and malicious charges, it further alleges that appellant made false statements affecting its solvency and business integrity and its title to its property to various named persons with the malicious intent to injure appellee's credit and business reputation. Under a fair construction of this pleading, to which no exception was presented by appellant, appellee's claim for damages is not based upon the bringing of the suit by appellant, nor upon the false statements contained in his petition, but upon appellant's slanderous statements made to the persons named in appellee's pleading. The privilege accorded a litigant which exempts him from liability for damages caused by false charges made in his pleadings, or in the court in the course of a judicial proceeding, cannot be enlarged into a license to go about in the community and make false and slanderous charges against his court adversary and escape liability for damages caused by such charges on the ground that he had made similar charges in his court pleadings.

Appellant's second contention is equally untenable. If any of the defamatory statements alleged and shown to have been made by appellant could be held to be qualifiedly privileged, as before said, the evidence is sufficient to sustain the findings of the jury that appellant was actuated by malice in making the statements, and that such statements caused appellee actual damage in the sum found by the jury.

[4] There being neither pleading nor evidence that appellant's statements directly charging appellee with dishonesty in the conduct of its business were true, or that appellant had reasonable grounds to believe them to be true, the jury were authorized to infer that such statements were maliciously made, and to award appellee exemplary damages.

[5, 6] It goes without saying that a corporation cannot recover damages for slander of its president which affects only his reputa-tion. Such is not the case made by the record. The defamatory statements shown to have been made by appellant were not confined to charges affecting the integrity of appellee's president, but included the entire management of the corporation, whom he designated "a bunch of crooks," and necessarily affected the business integrity of the corporation. Corporations can only act through officers and agents and any slander of a corporation would ordinarily reflect upon its governing body of officers. Unless the corporation could recover for slander of its officers in the general conduct of its business when direct injury is caused thereby, it could never recover for injury caused by slander affecting its integrity in the conduct of its business. It is well settled that a corporation can recover damages for injury caused its business by defamatory words published concerning its method of conducting its business, without any allegation or proof of special damage. 37 C. J. par. 296, p. 11; People's U. S. Bank v. Goodwin, 148 Mo. App. 364, 128 S. W. 220; Martin County Bank v. Day, 73 Minn. 195, 75 N. W. 1115.

[7] Appellee's pleading, in the absence of a special exception, being entitled to every reasonable intendment, we think should be construed as basing its cause of action upon the defamatory statements concerning appellee made by appellant to the various persons named in the pleading, and not upon the bringing by appellant of this suit against appellee, nor the making in his petition of similar defamatory statements. Under this construction of the pleading the trial court did not err in refusing appellant's request to instruct the jury that "plaintiff had the right to bring a suit or several suits against the defendant if he believed he had a cause of action, and the fact that he had filed suit should not be taken or used against him."

The right of appellant to bring suit against appellee upon any cause of action which he believed he had against it, not being challenged by any pleading or evidence, was not an issue in the case, and the court correctly declined to instruct the jury upon such issue.

[8] The form in which the issue of malice was submitted in the charge of the court was not objected to by appellant, and was substantially the same as the charge upon this issue requested by appellant. For these reasons, appellant's complaint of the refusal of the court to give his requested charge upon this issue is without merit.

[9] The requested charge submitting the issue of appellant's good faith in making the statements was properly refused, for want of either pleading or evidence raising the issue.

[10] It was agreed by the appellee and appellant "that any evidence as to the financial responsibility of the Ship Channel Development Company may be omitted, admitting that the plaintiffs have no grounds for the appointment of a receiver since the withdrawal

of the stockholders Szabo and Boyd." This agreement was not a dismissal of his suit by appellant, and the court properly rendered judgment against him denying his application for injunction and the appointment of a receiver.

What we have said disposes of all the material questions presented by appellant's brief. All of his propositions have been considered and none of them can be sustained. It follows that the judgment of the trial court should be affirmed; and it has been so ordered.

Affirmed.