NUMBER 13-02-471-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MADHAVAN PISHARODI, M.D., Appellant,


v.



J. MARTIN BARRASH, M.D. AND HOUSTON 

NEUROSURGICAL ASSOCIATES, P.A., Appellees.

 


On appeal from the 103rd District Court of Cameron County, Texas.

 


O P I N I O N



Before Justices Hinojosa, Yañez, and Garza


Opinion by Justice Garza



Appellant challenges a trial court's award of summary judgment in favor of appellees
on a claim of libel asserted against them by appellant. In this appeal, we decide whether
the allegedly libelous statements are protected speech and if not, whether they are
privileged communications. We answer both issues in the negative and reverse the trial
court's judgment in favor of appellees. 

Factual Background

This action stems from medical treatment given to Juan Escobedo ("Escobedo") by
appellant, Madhaven Pisharodi, M.D. ("Dr. Pisharodi"), a doctor specializing in
neurosurgery. Escobedo was injured in a work-related accident, and Dr. Pisharodi
recommended extensive surgery to correct his condition. Escobedo's insurance carrier
disputed the necessity of the recommended treatment and requested opinions from three
additional physicians. Two of these physicians, one of whom was appellee J. Martin
Barrash, M.D. ("Dr. Barrash"), recommended a more limited procedure than the one
suggested by Dr. Pisharodi. Escobedo's insurer ultimately refused the surgery
recommended by Dr. Pisharodi, but it consented to an alternative surgery. 

After getting this consent from the insurer, Dr. Pisharodi performed surgery on
Escobedo. He then recommended that Escobedo undergo additional surgery and medical
treatment. Escobedo's insurance carrier responded by forwarding his medical records to
Dr. Barrash, along with Dr. Pisharodi's medical reports and billing statements. Through its
attorney, Keith N. Uhles ("Uhles"), the carrier asked that Dr. Barrash supply his "thoughts
and opinions regarding the medical course undergone by Mr. Escobedo." Specifically, Dr.
Barrash was asked to evaluate Dr. Pisharodi's treatment of Escobedo, including whether
the surgery performed by Dr. Pisharodi exceeded the treatment to which it had consented. 
Dr. Barrash responded in a letter addressed to Uhles. 

After learning of Dr. Barrash's letter to Uhles, Dr. Pisharodi sued Dr. Barrash and
Houston Neurosurgical Associates, P.A., a group with which Dr. Barrash practices
medicine (collectively the "defendants"). He claimed that the statements made in Dr.
Barrash's letter were libel per se. The defendants moved for summary judgment, claiming
that the statements were absolutely privileged and therefore not actionable because they
were: (a) pure expressions of opinion, and (b) made in connection to a judicial proceeding. 
Dr. Pisharodi argued that summary judgment for the defendants was improper because
the statements were not pure expressions of opinion and because the defendants had
failed to show that the letter was prepared in contemplation of a judicial proceeding. 
According to Dr. Pisharodi, even if the defendants had made such a showing, a genuine
issue of material fact exists as to whether the letter was subsequently published outside
the privileged context of judicial proceedings. 

The trial court ruled for the defendants. It concluded that, as a matter of law, the
contested statements were pure opinions. It further concluded that the publication of such
statements to claim examiners working for the United States Department of Labor could
not be the basis of a libel claim because such publication occurred in connection to a
quasi-judicial proceeding. As such, the publication was absolutely privileged. 

 A. Standard of Review

We review summary judgments de novo. Natividad v. Alexsis, Inc., 875 S.W.2d
695, 699 (Tex. 1994); Tex. Commerce Bank-Rio Grande Valley, N.A. v. Correa, 28 S.W.3d
723, 726 (Tex. App.--Corpus Christi 2000, pet. denied). In reviewing summary judgment
evidence, the issue is whether the evidence establishes as a matter of law that there is no
genuine issue of material fact as to one or more of the necessary elements of the plaintiff's
cause of action. See Tex. R. Civ. P. 166(a); Gibbs v. Gen. Motors Corp., 450 S.W.2d 827,
828 (Tex. 1970); Hartman v. Urban, 946 S.W.2d 546, 548 (Tex. App.--Corpus Christi
1997, no writ). The standards for reviewing summary judgment evidence are:

(1) The movant for summary judgment has the burden of showing that there
is no genuine issue of material fact and that it is entitled to judgment as a
matter of law.

(2) In deciding whether there is a material fact issue precluding summary
judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in its favor.


Sysco Food Servs. v. Trapnell, 890 S.W.2d 796, 800 (Tex. 1994); see also Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 

1. Protected Speech 

This is an action for defamation. It involves a claim of libel based on the letter sent
by Dr. Barrash to Uhles. Defamation occurs when a false statement about a plaintiff is
published to a third person without legal excuse, causing damages to the plaintiff's
reputation. See Shearson Lehman Hutton, Inc. v. Tucker, 806 S.W.2d 914, 921 (Tex.
App.--Corpus Christi 1991, writ dism'd w.o.j.). Libel is defamation in written or other
graphic form that tends to injure a person's reputation, exposing the person to public
hatred, contempt, or ridicule. See Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (Vernon
2003); Doe v. Mobile Video Tapes, Inc., 43 S.W.3d 40, 48 (Tex. App.--Corpus Christi
2001, no pet.). To recover for libel, the plaintiff must prove that the defendant: (1)
published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting
with either actual malice, if the plaintiff was a public official or public figure, or negligence,
if the plaintiff was a private individual, regarding the truth of the statement. WFAA-TV, Inc.
v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998); see also Carr v. Brasher, 776 S.W.2d
567, 569 (Tex. 1989) (citing N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)).

In a libel action, the trial court initially must determine, as a matter of law, whether
the words used are reasonably capable of defamatory meaning by considering the
allegedly defamatory statement as a whole. See Musser v. Smith Protective Servs., Inc.,
723 S.W.2d 653, 654-55 (Tex. 1987); Beaumont Enter. & Journal v. Smith, 687 S.W.2d
729, 730 (Tex. 1985), overruled on other grounds by Casso v. Brand, 776 S.W.2d 551, 559
(Tex. 1989); see also Durckel v. St. Joseph Hosp., 78 S.W.3d 576, 583 (Tex.
App.--Houston [14th Dist.] 2002, no pet.). The determination is based on how a person
of ordinary intelligence would perceive the entire statement. See generally Fitzjarrald v.
Panhandle Publ'g Co., 228 S.W.2d 499, 504-505 (1950); see also Bentley v. Bunton, 94
S.W.3d 561, 579 (Tex. 2002); Durckel, 78 S.W.3d at 583; Garcia v. Burris, 961 S.W.2d
603, 605 (Tex. App.--San Antonio 1997, pet. denied). This question is only submitted to
a jury if the contested language is ambiguous or of doubtful import. See Denton Pub. Co.
v. Boyd, 460 S.W.2d 881, 884 (Tex. 1970); Christy v. Stauffer Publ'n, Inc., 437 S.W.2d
814, 815 (Tex. 1969). Otherwise, it is an issue of law for the court to decide. See Musser,
723 S.W.2d at 655; Smith, 687 S.W.2d at 730; Boyd, 460 S.W.2d at 884; Christy, 437
S.W.2d at 815; Fitzjarrald, 149 Tex. at 97. In this case, Dr. Pisharodi claims that the
statements made by Dr. Barrash in his letter to Uhles were libel per se because they
accused Dr. Pisharodi of committing a crime. Dr. Barrash counters that the challenged
statements were protected opinion speech. Whether allegedly defamatory statements are
actionable or are instead protected opinion speech depends on a reasonable person's
perception of the entire publication. See Bentley, 94 S.W.3d at 579; Turner v. KTRK
Television, Inc., 38 S.W.3d 103, 115 (Tex. 2000). To distinguish between fact and opinion,
we are bound to use as our guide the United States Supreme Court's latest word on the
subject, Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990). Bentley, 94 S.W.3d at 579. 
As the Texas Supreme Court has explained, "Milkovich supplants various proposed
dichotomies between fact and opinion." Id. at 580-81. The disavowed dichotomies include
the four-part test established in Ollman v. Evans, 750 F.2d 970 (D.C. Cir. 1984) (en banc),
and the rule of section 566 of the Restatement (Second) of Torts, Restatement (Second)
of Torts § 566 (1977). See Bentley, 94 S.W.3d at 580-81. In lieu of such distinctions,
Milkovich focuses the analysis on a statement's verifiability and the entire context in which
it was made. Id. at 581.

In awarding summary judgment to Dr. Barrash, the trial court relied on the four-part
test of Ollman v. Evans. Such reliance was erroneous. We now apply the appropriate
standard articulated by Milkovich, beginning with a reproduction of Dr. Barrash's letter
below. Dear Mr. Uhles:


I have read your summary of March 21, 2000 concerning Mr. Ron [sic]
Escobedo. Likewise, I have reviewed all of the medical records you sent me
concerning his other evaluations, his preoperative comments by Dr.
Pisharodi, and his operative note and subsequent care.


Needless to say, this is a travesty.


Dr. Pisharodi has wontedly [sic] disregarded that which was allowed by him. 
He obviously did it poorly and overcharged for a procedure that was not
necessary. 


Basically he has disregarded everything that was discussed with him and
recommended and just went ahead and did a poorly executed, improperly
done operation. 


I will try to answer those questions posed in your letter of March 21, 2000.


The surgery performed by Dr. Pisharodi was certainly not the same surgery
which was authorized. It was what he wanted to do and not what was
necessary and certainly not that which was approved. In my opinion it was
totally unreasonable and substantially failed to meet the professional,
recognized standards of that which was allowable and authorized. 


At the present time, I do not think that 3 months is a sufficient postoperative
course to determine whether Mr. Escobedo needs the 2 level lumbar
laminectomy, diskectomy and fusion with instrumentation that Dr. Pisharodi
has always been of the mind that needs to be done. Come hell or high
water, he was going to see that this unnecessary procedure would be
performed on this poor, unfortunate young man. 


I think that before anyone allows Dr. Pisharodi to attack this young man
again, he needs to see another physician. Studies need to be done and
appropriate care recommended. 


In my opinion, the necessity, character and sufficiency of the medical care
being given and recommended by Dr. Pisharodi is not comparable to the
standard of medical care in this community or in his community. 


If the procedure is necessary as recommended by Pisharodi, it is necessary
because of his ill advised, poorly performed, unnecessary procedure not of
the standard of care in any community. 


The stabilization at 2 levels was not necessary on this 24-year-old man's
back when I saw him. If it is necessary now, it is necessary because of the
arrogance and disregard to the patient's safety as exhibited by Dr. Pisharodi. 


Without question, this case needs to be taken to the Texas Board of Medical
Examiners as a clear indication of an ill conceived, unauthorized, poorly
performed, unnecessary surgery. 


Needless to say, the gouging demonstrated on the billing of $14,200.00 was
primarily for Dr. Pisharodi's benefit and certainly not for the patient. Were
the procedure that was necessary performed on this young man, it would be
somewhere in the $4,000.00-$5,000.00 range in a major medical center. 
Obviously, the fees in a major medical center would be more than those in
an outlying area; however, as such that would have been indicated. 


In my opinion, Dr. Pisharodi has assaulted this man under the guise of
medical treatment. 


Sincerely,


J. Martin Barrash, M.D. 


We conclude that taken as a whole, this letter is capable of defamatory effect. Its
overarching theme encompasses not only a scathing evaluation of Dr. Pisharodi's
performance but an accusation that his actions in treating Escobedo amounted to nefarious
criminal conduct, namely, assault. To charge one falsely with the commission of any crime
for which he may be punished by imprisonment is libel per se. Christy, 437 S.W.2d at 815;
see also Democrat Publ'g Co. v. Jones, 18 S.W. 652 (1892). In the letter, Dr. Barrash
unmistakably accuses Dr. Pisharodi of assaulting his patient. He also intimates that the
assault was perpetrated for financial gain. Although Dr. Barrash couches his accusation
of assault in terms of his professional opinion, such hedging does not mitigate the
defamatory impact of a criminal accusation. See Bentley, 94 S.W.3d at 583-84. As the
Supreme Court explained in Milkovich:

If a speaker says, "In my opinion John Jones is a liar," he implies a
knowledge of facts which lead to the conclusion that Jones told an untruth.
Even if the speaker states the facts upon which he bases his opinion, if those
facts are either incorrect or incomplete, or if his assessment of them is
erroneous, the statement may still imply a false assertion of fact. Simply
couching such statements in terms of opinion does not dispel these
implications; and the statement, "In my opinion Jones is a liar," can cause as
much damage to reputation as the statement, "Jones is a liar." As Judge
Friendly aptly stated: "[It] would be destructive of the law of libel if a writer
could escape liability for accusations of [defamatory conduct] simply by
using, explicitly or implicitly, the words 'I think.'" See Cianci [v. New Times
Publishing Co., 639 F.2d 54, 64 (2d Cir., 1980)]. It is worthy of note that at
common law, even the privilege of fair comment did not extend to "a false
statement of fact, whether it was expressly stated or implied from an
expression of opinion." Restatement (Second) of Torts, § 566, Comment a
(1977).


Milkovich, 497 U.S. at 18-19. On this basis, we conclude as a matter of law that Dr.
Barrash's letter was capable of defamatory meaning and is not protected opinion speech. 
The trial court erred in concluding otherwise. 

2. Absolute Privilege

 In its summary judgment order, the trial court declared that the statements at issue
in the case were made in connection to a quasi-judicial proceeding. It concluded that
"therefore, only as to publication . . . to the Department of Labor's claim examiner, the
complained of statements are absolutely immune from prosecution." We agree. 
Communications made in the due course of a judicial proceeding will not serve as the basis
of a civil action for libel or slander, regardless of the negligence or malice with which they
are made. James v. Brown, 637 S.W.2d 914, 916 (Tex. 1982); Reagan v. Guardian Life
Ins. Co., 166 S.W.2d 909, 912 (Tex. 1941). This privilege extends to any statement made
by the judges, jurors, counsel, parties or witnesses, and attaches to all aspects of the
proceedings, including statements made in open court, pre-trial hearings, depositions,
affidavits and any of the pleadings or other papers in the case. James, 637 S.W.2d at 916-17. In this case, Dr. Barrash's letter was made in connection to a worker's compensation
claim. Such publication is privileged. 

Although libelous statements made in connection to a judicial proceeding are
absolutely privileged, re-publication of such statements outside of the judicial context
waives the privilege. See, e.g., Levingston Ship Bldg. Co. v. Inland West Corp., 688
S.W.2d 192, 196 (Tex. App.--Beaumont 1985, writ ref'd n.r.e.); De Mankowski v. Ship
Channel Dev. Co., 300 S.W. 118, 122 (Tex. Civ. App.--Galveston 1927, no writ). In this
case, Dr. Pisharodi alleges that Dr. Barrash's letter was re-published outside of the judicial
context in which it was originally made. He submitted two affidavits to the trial court in
resisting the defendants' motion for summary judgment. The first affidavit is from Dr.
Pisharodi, and in it, he states that Dr. Barrash's letter was "circulated to persons other than
the hearing examiner and the parties to Mr. Escobedo's worker's compensation claim." He
expressly bases this assertion on conversations that he has had with other doctors,
insurance adjusters, attorneys and patients, including Escobedo. The second affidavit
relied on by Dr. Pisharodi was made by Juan Escobedo. In it, Escobedo declares, "I am
aware of the letter done by Dr. Barrash dated March 22, 2000 . . . and Dr. Esses and
others have commented to me about this letter and my care and treatment by Dr.
Pisharodi." On the basis of those affidavits, Dr. Pisharodi argues that a genuine issue of
material fact exists as to whether the defendants published the letter outside of the judicial
proceeding. We agree. 

The trial court's order is REVERSED and the case is REMANDED for further
proceedings consistent with this opinion. ________________________

 DORI CONTRERAS GARZA, 

 Justice


Opinion delivered and filed 

this the 29th of August, 2003.